# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY LEE WILLIAMS,<br><br>    Petitioner,<br><br>    v.<br><br>M.D. McDONALD,<br><br>    Respondent. | 1:10-cv-01219-OWW-DLB (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### BACKGROUND

Following a jury trial in the Madera County Superior Court, Petitioner was convicted of failing to register as a sex offender. (Cal. Penal Code[1] § 290.)  Petitioner admitted that he suffered four serious felony convictions: two counts of forcible rape in concert, a robbery, and a home burglary in 1990 (§ 667 subd. (b)-(I)), and served a prior prison term (§ 667.5 subd. (b)). Petitioner was sentenced to state prison for the aggregate term of 26 years to life.

Petitioner filed a timely appeal to the California Court of Appeal.  On March 12, 2009, the appellate court affirmed the judgment.

On April 22, 2009, Petitioner filed a petition for review in the California Supreme Court, which was denied on June 24, 2009.

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated,

On August 28, 2009, Petitioner filed a petition for writ of habeas corpus in Madera County Superior Court.  The petition was denied on September 3, 2009.

On September 22, 2009, Petitioner filed a petition in the California Court of Appeal.  The petition was denied on January 13, 2010.

On February 11, 2010, Petitioner filed a petition in the California Supreme Court, which was denied on March 18, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on June 23, 2010.  On December 2, 1010, Respondent filed an answer to the petition.[2]  Petitioner did not filed a traverse.

## STATEMENT OF FACTS

[Petitioner] was released from state prison on Wednesday, May 24, 2006, on parole after a Madera County conviction of forcible rape in concert.  He took an Amtrak train back to Madera and spent his first night after release with a friend.  He could stay there one night, however, because the friend was moving.

Within 24 hours of his release, as required, [Petitioner] met with parole agent and officer of the day Gloria Chadwick for an initial interview.  During such an initial interview, a parolee is informed of any requirements for registration with the police or the sheriff, depending upon the parolee's place of residence.  During [Petitioner's] initial interview, on Thursday, May 25, 2006, Agent Chadwick marked "Yes" and circled "PC 290" on the intake form.  Chadwick testified that this meant she personally advised [Petitioner] to register within five days under section 290.  In the comments section of the form, Agent Chadwick noted: "To register, 290 PC by 5-31-06."  Chadwick directed [Petitioner] to meet with his assigned parole agent, Todd Cregar, on Friday, May 26, 2006.

[Petitioner] spent the night of Thursday, May 25, 2006, at the Madera Rescue Mission (the Mission).

On May 26, 2006, [Petitioner] met with Agent Cregar and advised Cregar he was staying at the Mission. [Petitioner] had not yet registered with either the police or the sheriff.  Cregar directed [Petitioner] to register and noted in his parole file that [Petitioner] must register by May 31, 2006.  Cregar informed [Petitioner] that [Petitioner] could not remain at the Mission.  It was too close to a school to allow for [Petitioner's] residence.

Cregar arranged for [Petitioner] to stay at the Casa Grande Motel (the

---

[2] On February 25, 2011, Petitioner filed a motion for stay and abeyance of the petition. Respondent filed an opposition on March 18, 2011, and Petitioner filed a supplemental motion on March 31, 2011. On April 12, 2011, the undersigned issued an order denying Petitioner's request for a stay under Rhines v. Weber, 544 U.S. 269 (2005) and informed him the action could be stayed under Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003) at his request. Petitioner failed to respond to the Court's order, therefore, the Court is proceeding on the presumption that Petitioner did not desire to stay the action pursuant to Kelly.

2

Motel) in Madera. He drove [Petitioner] and another parolee to that motel and directed both to register with the Madera Sheriff's Department since the Motel was located in the County of Madera. [Petitioner] spent that night, Friday, May 26, 2006, at the Motel.

Cregar made a mandatory home visit within five days of placing [Petitioner] at the Motel, but [Petitioner] was gone from his assigned room and had taken all of his personal belongings with him. Cregar returned another day but [Petitioner] was still not present.

[Petitioner] had moved to the home of a cousin in the City of Madera on Saturday, May 27, 2006. He had done so, according to his testimony, because he had been kidnapped and threatened by certain people who came to this room at the Motel. He had escaped but remained afraid of them. He made no attempt to contact Agent Cregar, and he did not register. He remained at the home of his cousin until his arrest on Saturday, June 3, 2006. At that time, he had been out of prison and in Madera for 10 days, not counting the day of his release. He had passed six full working days, not including the day of his release, in Madera. These were Thursday and Friday, the 25th and 26th of May, as well as Tuesday through Friday, May 30th through June 2d, 2006. Monday, May 29th, had been the Memorial Day holiday.

[Petitioner] testified he had lived in Madera most of his life, his family lived in Madera, and he regularly returned to Madera upon his release on parole, which had occurred several times after his 1990 conviction for rape and burglary. [Petitioner] said he tried to register at the Madera Police Department on Friday, May 26, 2006, before his visit with Agent Cregar, but he was turned away because he did not have an appointment or any identification.

[Petitioner] acknowledged in his testimony that he was aware of his registration requirements. Evidence was presented that he previously had incurred parole violations for failing to comply with those requirements.

(Lod. Doc. 3 at 2-4.)

## DISCUSSION

A. <u>Jurisdiction</u>

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule

4

to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). "A state court's determination that a claim lacks merits precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

C. <u>Insufficient Evidence to Support Conviction for Failing to Register as a Sex Offender Within Five Days of Establishing a Residence</u>

Petitioner contends there was insufficient evidence that he failed to register within the meaning of California Penal Code section 290, requiring registration within five working days of establishing a residence. Because the California Supreme Court denied the claim without comment, this Court looks through to the reasoned decision of the California Court of Appeal, Fifth Appellate District. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

The state appellate court found sufficient evidence to support Petitioner's conviction stating:

> At the time of the alleged offense, section 290 stated in pertinent part:
>
> "(a)(1)(A) Every person [who is required to register], for the rest of his or her life while residing in California, . . . shall be required to register with the chief of police of the city in which he or she is residing, or the sheriff of the county if he or she is residing in an unincorporated area or city that has no police department . . . within five working days of coming into, or *changing his or her residence within*, any city, county, or city and county . . . ." (Stats. 2005, ch. 704, § 1, ch. 722, § 3.5, italics added.)
>
> The trial court instructed the jury in CALCRIM No. 1170 (failure to register as sex offender) (Judicial Council of Cal. Crim. Jury Instns. (2006) as follows:
>
> "[Petitioner] is charged with failing to register as a sex offender. To prove that [Petitioner] is guilty of this crime, the People must prove that, one, [Petitioner] was previously convicted of the crime of rape; two, [Petitioner] resided in Madera, California, or in an unincorporated area in Madera County, California; three, [Petitioner] actually knew he had a duty to register as a sex offender under . . . section 290, wherever he resided; and, four [Petitioner] willfully failed to register as a sex offender with the police chief of that city or sheriff of that county within five working days of coming into or *changing his residence within that city or county*. Someone commits an act willfully when he or she does it willingly or on purpose." (Italics added.)
>
> The purpose of the section 290 registration requirement is to assure that convicted sex offenders are readily available for police surveillance. The triggering of a sex offender's five-day notice period is a question for the jury. That question is not dependent upon whether the offender stayed at a residence five or more consecutive days. The duty to register arises when the sex offender enters a jurisdiction and ends when he or she leaves the jurisdiction. (*People v. Poslof* (2005) 126 Cal.App.4th 92, 103, 24 Cal.Rptr.3d 262; *People v. Davis* (2002) 102 Cal.App.4th 377, 382, 125 Cal.Rptr.2d 519.)
>
> While the registration requirement of section 290, subdivision (a)(1)(A) applies only where the sex offender "is residing" in a given jurisdiction, [Petitioner] cites and we are aware of no authority for the proposition that a person "is residing" in a jurisdiction only when staying at a place of residence - - that is, an address - - that will remain open to that person. We reject this proposition, which confuses the concept of residing in a jurisdiction with having a place of residence there.[3]
>
> In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses

---

[3] The verb "reside" is defined by the Random House Dictionary of the English Language (1973) in pertinent part, as "1. to dwell permanently or for a considerable time: He resides in Boston." (At p. 1220.) Subdivision (a)(1)(C)(vii) of section 290 (currently § 290.11, subd. (g)), defines the term "residence" as "one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address. . . ."

6

> evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Reversal on this ground is unwarranted unless it appears there is no sufficient evidence to support the conviction. (*People v. Poslof, surpa*, 126 Cal.App.4th at pp. 103-104, 24 Cal.Rptr.3d 262.) We consider the evidence in the light most favorable to the judgment. We presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. On appeal, the test is whether substantial evidence supports the decision and not whether the evidence proves guilt beyond a reasonable doubt. The sole function of the appellate court is to determine whether any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The standard of review is the same in cases where the prosecution relies upon circumstantial evidence. (*People v. Balkin* (2006) 145 Cal.App.4th 487, 491-492, 51 Cal.Rptr.3d 687; *People v. Chan* (2005) 128 Cal.App.4th 408, 415-416, 26 Cal.Rptr.3d 878.)
>
> Here, we believe there is more than sufficient evidence to support the conclusion, evidently drawn by the jury, that [Petitioner] began "residing" in Madera when he returned there upon his release from parole. He had grown up there and had family there. He was assigned a parole agent there, and he attempted to register there, accordingly to his testimony, even before seeing his assigned agent. In essence, [Petitioner] began "residing" in Madera at the same time he came into Madera. Thus, he was required and failed to register within the five working days allotted him.

(Lod. Doc. 3 at 5-7) (footnote in original.)

The appellate court determined under section 290 the prisoner does not have to have a place of residence or address to be "residing in" a specific jurisdiction. The state court reasoned such interpretation would allow a sex offender charged with failing to register to simply present a defense theory that he was a transient, with no address, thereby circumventing the registration requirement under state law. Moreover, the court pointed out that Petitioner's defense at trial was consistent with the jury's determination that he resided in Madera County:

> Here [Petitioner's] trial theory did not include an argument that he was not residing in Madera during the days between his release on parole and his arrest or even that he did not establish a residence when he stayed at the Mission.
>
> Further, [Petitioner] again fails to distinguish between "residing in," which was the relevant question here, and having a "residence" that he changed, which was not a question here.

Here, it was undisputed that Petitioner was paroled to Madera County, was released in Madera County, and was arrested in Madera County for failing to register with either Madera City Police or Madera County Sheriff's Department. Petitioner himself admitted that he lived in Madera County most of his life, his family lived in Madera County, and upon release on parole

he regularly returned to Madera County.  Thus, the evidence clearly established that Petitioner resided in Madera County.  Indeed, Petitioner merely re-argues that "[t]he evidence at trial did not show that Petitioner had a residence to register . . . ."  The state court rejected this legal interpretation of state law that "residing in" as required by California Penal Code section 290 means "having a place of residence" or address in the jurisdiction.  In <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005), the Supreme Court stated: "We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Accordingly, the state court's interpretation of its own law is binding on this Court and Petitioner's claim must be rejected.

D.     <u>Ineffective Assistance of Trial Counsel</u>

Petitioner contends defense counsel should have raised a relevancy objection to testimony that another parolee did register after hearing their parole agent's directions.  The state appellate court issued the last reasoned decision.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  <u>Id</u>. at 688; <u>Harrington v. Richter</u>, 131 S.Ct. at 788 ("The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Richter, 131 S.Ct. at 787 (internal citation omitted).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail. Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

The appellate court found counsel was not ineffective stating:

> During the People's case-in-chief, Agent Cregar testified he took two parolees, [Petitioner] and another individual, to the Motel on May 26, 2006. The other parolee was also part of Cregar's caseload. Cregar also said he had instructed them both to register that motel as their residence with the Madera County Sheriff's Department. The jury later sent the court a note asking whether the other parolee had in fact registered with the sheriff's department in accordance with Cregar's directions. The court discussed this question with defense counsel and the prosecutor outside the presence of the jury. During that discussion, the prosecutor proposed calling Cregar to the stand so he could answer this question. The prosecutor subsequently called Cregar to the stand and elicited his testimony that the other parolee had indeed registered as directed.
>
> [Petitioner] now contends what the other parolee did was irrelevant to any issue in [Petitioner's] trial and that his trial counsel was ineffective by failing to object to Cregar's testimony.
>
> During closing argument, [Petitioner's] trial counsel began his closing argument by focusing on [Petitioner's] version of events. He pointed out that [Petitioner] went to the Madera Police Department and tried to register but the

staff people on duty told [Petitioner] he did not have an appointment or appropriate identification and, there, could not register at that time. In framing his argument, defense counsel acknowledged the contrary testimony of Madera Police Officer Beck, who oversaw section 290 registrations between 2005 and 2007 and described the registration procedures of her office. Counsel nevertheless maintained his client was frustrated by the lack of identification and the inability to register despite his best efforts to do so. Moreover, counsel described [Petitioner's] sense of fear because of his interaction with the armed intruders. Counsel concluded, "He had to choose between a parole violation of his safety. So he chose his safety."

Under California law, it is not deficient performance for a criminal defense counsel to make a reasonable tactical choice. Reasonableness must be assessed through the likely perspective of counsel at the time. Because of the difficulties inherent in making such an evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. (*People v. Ochoa* (1998) 19 Cal.4th 453, 445-446.) In the instant case, defense counsel was faced with a critical inquiry by the jury. That inquiry related to the compliance of [Petitioner's] fellow parolee. Clearly, counsel could have interposed a vigorous relevance objection to the evidence proffered on that point. Upon reflection, however, counsel may have concluded that such an objection, if sustained, would have left matters unsettled for the jury. Instead of interposing an objection to Agent Cregar's testimony on recall, defense counsel attempted to turn it to his client's advantage by arguing that [Petitioner] made efforts to register with the Madera police, thus implying [Petitioner] was just as diligent as his fellow parolee at the Motel.

We cannot say that counsel did not make a reasonable tactical choice in dealing with the jury's inquiry and the trial court's rulings.

The defense's theory in this case was to appeal to the jury's sense of fairness. Defense counsel argued to the jury that the case involved "fairness" and the situation involved Petitioner attempting to register. (RT 786.) The fact that another parolee registered the same day was consistent with such defense theory and any objection was meritless. Petitioner testified that he attempted to register the day after he established a residence at the Mission, and he would have been successfully registered if his parole agent had followed through with his promise to drop off an ID for him. (RT 717-719, 725-726, 733-734.)

The parole agent's testimony that the other parolee registered the same day he dropped him off at the hotel was relevant to show that the agent advised of the requirement, it was capable of being readily understood, and put Petitioner on notice that he had to register the motel address. The fact of whether Petitioner actually heard the parole agent's advisement was disputed at trial. (RT 642-643.)

10

1    To the extent Petitioner attempts to submit new evidence purporting to show the other
2 parolee's identity and status, such evidence was not part of the record on direct appeal. The
3 exhibits were submitted for the first time in the state habeas corpus petition on collateral review
4 relating to an ineffective assistance of appellate court claim. However, to the extent Petitioner
5 contends such exhibits relate to his claim of ineffective assistance of trial counsel, Petitioner has
6 failed to develop the factual basis as set forth in 28 U.S.C. § 2254(e)(2), and such evidence
7 cannot be considered now in this Court. See e.g. Cullen v. Pinholster, __ U. S. __, 131 S.Ct.
8 1388, 1398-1399 (in reviewing the reasonableness of a state court's decision, a district court may
9 rely only on the record that was before the state court.) Based on the foregoing, the state court's
10 adjudication was neither contrary to, nor an unreasonable application of Supreme Court
11 precedent set forth in Strickland, nor was it based on an unreasonable determination of the facts
12 in light of the record.

13    E.    Ineffective Assistance of Appellate Counsel

14    Petitioner contends that his appellate counsel was ineffective for failing to (1) raise a
15 "factual dispute developed out of the jurisdiction of the Fifth District Court of Appeal"; (2) raise
16 trial counsel's "undue pessimistic view"; and (3) file a habeas petition in conjunction with the
17 brief on direct appeal. These claims were presented on collateral review to the California
18 Supreme Court which denied the claim on the merits.

19    Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the
20 Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective
21 assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller
22 v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th
23 Cir.1986); see, also, Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that
24 where a defendant has been actually or constructively denied the assistance of appellate counsel
25 altogether, the Strickland standard does not apply and prejudice is presumed; the implication is
26 that Strickland does apply where counsel is present but ineffective).

27    To prevail, Petitioner must show two things. First, he must establish that appellate
28 counsel's deficient performance fell below an objective standard of reasonableness under

prevailing professional norms. Strickland v. Washington, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998). The presumption of reasonableness is even stronger for appellate counsel because he has wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir.1989). Appealing every arguable issue would do disservice to the Petitioner because it would draw an appellate judge's attention away from stronger issues and reduce appellate counsel's credibility before the appellate court. Id. Appellate counsel has no constitutional duty to raise every nonfrivolous issue requested by petitioner. Id at 1434 n10 (*citing* Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983)).

The state court denied the claim on the merits stating:

> The court read and considered the petition for writ of habeas corpus. [¶] He is serving life out of this court in case number MCR025262.
>
> He seeks relief on the ground that he was denied the [effective] assistance of appellate counsel. First, his petition is not timely. Second, he did not include reasonably available documents to support his claim. Third, he raised the issue that his trial counsel was ineffective in his direct appeal which was denied by the court, therefore, his claim that his appellate counsel was ineffective in not raising said issue has no merit. Lastly, petitioner failed to show that his appellate attorney's representation was below standard and that he would have obtained a different result with proper representation.
>
> Accordingly, the petition is denied.

(Lod. Doc. 7 at 1-2.)

As an initial matter, Petitioner failed to submit exhibits H (Pet. at p.50) and I (Pet. at p.52) the state court in the first instance. Compare Petition, with Lodging Doc. 6. As previously stated this Court cannot consider evidence that was not submitted to the state court and must consider each claim based solely on the state record. Cullen v. Pinholster, 131 S.Ct. at 1398-1399.

With respect to Petitioner's exhibit D-1, a handwritten letter to the Madera County Sheriff, dated July 5, 2009, Petitioner requested the following information about "Jeff Raynor:"

> The month of May 26th thru June 8th, 2006 Listing a "JEFF RAYNOR" 24 years old, white male, D.O.B. 08/07/1981, as having registered his residence at the Casa Grande Motel 12390 Golden State Blvd., Madera, CA 93637.

(Pet. exh. D-1, at p.38.) On July 13, 2009, the Madera County Sheriff replied by letter stating:

> I received your request dated July 5, 2009 in which you requested information regarding a subject by the name of Jeff Raynor. A check of our database did not reveal any information matching your criteria regarding this subject.

(Pet. exh. D-2, at p.39.)

Petitioner has failed to establish that "Jeff Raynor" was the other parolee referenced by parole agent Cregar. Agent Cregar never testified as to the identity of the other parolee and reasonably so because the identity of the other parolee was irrelevant. Petitioner's defense was that he tried to register with the Madera police and would have been able to do so if Agent Cregar had provided an ID to him as promised. Thus, the identity of the other parolee was not relevant to his defense, and there is no support for the finding that appellate counsel should have raised a "factual dispute" regarding this issue on direct appeal.

Petitioner concedes that the "factual dispute [was[ developed out of the jurisdiction of the Fifth District Court of Appeal." (Pet. at p.5.) Indeed, Petitioner did not write the letter presented as exhibit D-1 until July 5, 2009, well over a year after his brief on appeal was filed on June 14, 2008. Therefore, Petitioner's claim is without merit.

Petitioner's claim that appellate counsel was also ineffective for failing to argue that trial counsel had an "undue pessimistic view" is without merit. Petitioner claims that in December of 2007, he wrote a letter to appellate counsel indicating how trial counsel's conduct was pessimistic because Petitioner refused to accept the seven-year plea offer. In his opening brief, appellate counsel presented the following three claims of ineffective assistance of trial counsel: (1) "failure to request jury instructions that adequately defined the requisite elements of the offense;" (2) "failure to bring a motion to dismiss at the close of the prosecution's case-in-chief:" and (3) "failure to object to the introduction of evidence that the other parolee whom Parole

Agent Cregar advised to register did, in fact, register." (Lod. Doc. 1, at ii.) Appellate counsel reasonably did not present this claim in the opening brief because it does not state a viable claim for relief, let alone present a federal question. Because there is no basis to support this claim, appellant counsel could not have been ineffective. Jones v. Barnes, 463 U.S. at 751-54.

Petitioner also submits new documents that were not presented to the state court and such documents cannot be grounds to demonstrate ineffective assistance of appellate counsel. More specifically, Petitioner submits the parole revocation report and a two page transcript of the preliminary hearing which took place on January 12, 2007. Appellate counsel was aware of the fact that Petitioner was arrested on suspicion of the rape of an 86 year old victim and such evidence was excluded from trial. Petitioner fails to set forth the basis of the submission of the preliminary hearing transcript and how it presents a cognizable claim that appellate counsel was ineffective.

In any event, the state court's rejection of this claim was objectively reasonable. On December 1, 2006, Petitioner filed a Marsden motion expressing his dissatisfaction with trial counsel. The trial court heard the motion and the following occurred:

> [PETITIONER]: Yes, I have a - - I don't know, disagreement - - not on the same terms, don't appear. I am trying to do some things here, you know, with this case, matter and it doesn't appear that Mr. Meyer is on the same page, you know. I understand an offer has been put on the table, you know, in this matter and I refused the offer. I just don't - - I don't feel it's fair.
>
> I understand the repercussions behind it, should the matter end up going to trial. And I have expressed this to Mr. Meyer. And I mean, I don't know if he is up for the challenge as far as the trial thing, so in our discussions that's what it appears to me that he is not. So I felt like since he is not why should he be, you know, handle this.
>
> THE COURT: I am sure Mr. Meyer is up to the challenge.
>
> [PETITIONER]: He hasn't made it clear to me. It doesn't sound like it.
>
> THE COURT: Mr. Meyer, are you up to the challenge.
>
> [MR. MEYER]: I prefer not to take it to trial. I think it's not in [Petitioner's] best interest to take this to trial. At this point I have indicated to him that the Romero Motion has been denied and at this point the offer is 7 years. And if he takes it to trial and loses, he will face 25 to life. There's a possible defense. However, to be honest, I don't think - - it barely passes the straight face test and so as such I would - - it makes me nervous to take it to trial because I don't know what the consequences would be. However, if it is taken to trial I

1   would be perfectly willing to defense Mr. Williams to the fullest capabilities that I have.

2   THE COURT: Well, he's looking at 25 to life even as to Count 2, failing to register.

4   MR. MEYER: Yes. I am sorry, Count - -

5   THE COURT: Count 1 is the rape.

6   MR. MEYER: That's been dismissed.

7   THE COURT: So it's just Count 2?

8   MR. MEYER: Just Count 2.

9   THE COURT: That's a pretty cut and dry allegation.

10   MR. MEYER: Generally it is, yes.

11   THE COURT: So Mr. Williams, I am sure Mr. Meyer is more than willing and able to follow your wishes and take the matter to preliminary hearing and a jury trial. But you know what I suggest we do is at least get it to prelim.

13   [PETITIONER]: All right.

14   THE COURT: And see what - - how solid the evidence is on the failure to register and hopefully the District Attorney's Office will keep the offer open.

16   MR. MEYER: All right.

17   THE COURT: But I don't know what your trial strategy is, [Petitioner], but Mr. Meyer has presented a lot of different types of defenses and although I don't have any idea what you have in mind - - but you have discussed it with Mr. Meyer?

19   [PETITIONER]: Well, we never really have gotten past a certain point, you know, in our discussion. Every time we ever met its basically, you know, what the District Attorney, you know, had in mind and that's the information he brought me, along with some documentation, you know, some case law concerning my case matter and all. But as far as a strategy part, no, we never really gotten to that.

23   THE COURT: You need to discuss that before the preliminary hearing.

24   [PETITIONER]: Yes, yes, I am aware of that. Now at the time that you're speaking about prior to - - no, it never came up as a conversation.

25   MR. MEYER: Actually when we have some discussions as to what the defense would be and the reason that hasn't come up more often is because I don't think the defense would be a very strong one.

27   THE COURT: It's not a viable one - -

28   MR. MEYER: Like I said - -

1          THE COURT: - - or weak.

2          MR. MEYER: Yes.

3          THE COURT: All right. Well, you always have a right to have a jury decide how good your defense is, Mr. Williams.

4

5          [PETITIONER]: Yeah, that's one thing about it is that's good. I kind of put trust in that even though it could go either way.

6          THE COURT: It could go very bad, badly for you. Then I will deny your motion at this time. We will go and set it for a preliminary hearing here and go from there.

7

8          [PETITIONER]: Sounds good.

           THE COURT: Okay. Thank you.

9

10 (RT 126-129.) The trial commenced eight months later on August 14, 2007, and Petitioner was

11 sentenced on September 14, 2007. Petitioner never filed a renewed Marsden motion at anytime.

12 Thus, the state court's adjudication was not objectively unreasonable, as appellate counsel

13 "raised the issue that his trial counsel was ineffective in his direct appeal which was denied by

14 [the] court, therefore, his claim that his appellate counsel was ineffective in not raising said issue

15 has no merit. [P]etitioner failed to show that his appellate attorney's representation was below

16 standard and that he would have obtained a different result with proper representation." (Lod.

17 Doc. 7.)

18          Lastly, Petitioner's claim that his appellate counsel was ineffective for failing to file a

19 habeas petition along with the brief on direct appeal, is also without merit. There is no

20 constitutional right to assistance of counsel in habeas corpus cases, and therefore a petitioner

21 cannot raise a claim challenging any alleged ineffective assistance. See e.g. Coleman v.

22 Thompson, 501 U.S. 722, 755 (1991); Pennsylvania v. Finley, 491 U.S. 551, 555 (1987); Murray

23 v. Carrier, 477 U.S. 478, 488 (1986); Bonin v. Vasquez, 999 F.2d 425, 429 (9th Cir. 1993);

24 Harris v. Vasquez, 949 F.2d 1497, 1513-1514 (9th Cir. 1991). Thus, the state court's denial of

25 this claim was not contrary to, or an unreasonable application of, clearly established right under

26 Supreme Court precedent.

27          In any event, Petitioner was provided effective assistance by appellate counsel. After the

28 California Court of Appeal issued its decision, Petitioner asked appellate counsel why he did not

16

contact his trial counsel to ask for an explanation for failing to object to certain testimony. Appellate counsel responded in writing stating the following:

> I did not ask trial counsel for an explanation why he had not raised the preserved these issues, because no reasonable explanation could be provided for abandoning your client's clear and viable defense. Moreover, a direct appeal is limited to only what is in the record of the trial court, so trial counsel's response could not be considered in your direct appeal.
>
> I did not pursue a petition for writ of habeas corpus because the issue we raised was fully set out in the record on appeal, so that is where it had to be litigated.

(Pet. at p.51.) Thus, appellate counsel raised the issue of ineffective assistance of trial counsel on the grounds he found viable. Even if Petitioner had a constitutional right to effective assistance of appellate counsel, the state court's decision was not contrary to, nor an unreasonable application of Supreme Court precedent under Strickland, nor was it based on an unreasonable determination of the facts on this record.

F.   Violation of Due Process by Superior Court

Petitioner contends the superior court erred by denying his habeas petition, in part, as untimely. This claim was presented to the California Supreme Court in a petition for writ of habeas corpus. The superior court issued the last reasoned decision.

The state court may deny habeas relief on the merits or as procedurally barred. Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255 (1989). Thus, the fact that the state court partially denied the claim as untimely does not present a constitutional violation.

In any event, Petitioner received a decision on the merits. If the state court decision denies the petition as procedurally barred, an alternative ruling on the merits does not default the procedural ruling. Harris v. Reed, 489 U.S. at 264 n.10. Despite the procedural ruling, the superior court issued a reasoned decision denying the claim on the merits:

> Second, he did not include reasonably available documents to support his claim. Third, he raised the issue that his trial counsel was ineffective in his direct appeal which was denied by court, therefore, his claim that his appellate counsel was ineffective in not raising said issue has no merit. Lastly, petitioner failed to show that his appellate attorney's representation was below standard and that he would have obtained a different result with proper representation.

(Lod. Doc. 7 at p.1-2.)

There is simply no showing that Petitioner's due process rights were violated when the superior denied the habeas petition in part as untimely and in the alternative on the merits. Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

<u>RECOMMENDATION</u>

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **May 26, 2011**              **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE